UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:17-CV-145-CHL

VICTOR MANUEL HERNANDEZ-MATTA,                                              Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,                                        Defendant.

## MEMORANDUM OPINION AND ORDER

Before the Court is the complaint (DN 1) of plaintiff Victor Manuel Hernandez-Matta ("plaintiff"). In his complaint, plaintiff seeks judicial review of the final decision of the Commissioner of Social Security ("the Commissioner"). *See* 42 U.S.C. § 405(g) (2012) ("Any individual, after any final decision of the Commissioner of Social Security . . . may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision . . . ."). Plaintiff filed a Fact and Law Summary (DN 15). The Commissioner also filed a Fact and Law Summary (DN 21).

The parties have consented to the jurisdiction of a magistrate judge to enter judgment in this case with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed (DN 14.) Therefore, this matter is ripe for review. For the reasons set forth below, the final decision of the Commissioner is affirmed.

I.      **BACKGROUND**

Plaintiff protectively filed an application for disability insurance benefits on June 24, 2013 and for supplemental social security income on February 6, 2015. (R. 14, 96, 113.) In both

applications, plaintiff alleged disability beginning on January 1, 2010; plaintiff later amended his alleged onset date to February 28, 2015. (*Id*. at 14.)

On June 23, 2016, Administrative Law Judge Steven Collins ("the ALJ") conducted a hearing in Louisville, Kentucky. Plaintiff appeared via video teleconference and was represented by John Sharpensteen. Linda Jones, a vocational expert, also testified at the hearing. In a decision dated November 2, 2016, the ALJ engaged in the five-step evaluation process promulgated by the Commissioner to determine whether an individual is disabled. In doing so, the ALJ made these findings.

1. Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2019. (*Id*. at 16.)

2. Plaintiff has not engaged in substantial gainful activity since February 28, 2015, the alleged onset date. (*Id*.)

3. Plaintiff has the following severe impairments: morbid obesity; degenerative disc disease; sleep apnea; anxiety/depression; peripheral vascular disease; asthma; hypertension; hypertensive heart disease; and chronic obstructive pulmonary disease. (*Id*.)

4. Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id*. at 17.)

5. Plaintiff has the residual functioning capacity ("RFC") to perform sedentary work except occasional lifting/carrying up to twenty pounds and frequent lifting/carrying up to ten pounds. Plaintiff would sit six of eight hours and stand/walk two of eight hours. Plaintiff could occasionally use the lower extremities for pushing and pulling. Plaintiff could occasionally climb

ramps and stairs but never climb ladders, ropes, or scaffolds. Plaintiff could occasionally stoop, kneel, and crouch, but never crawl. Plaintiff could frequently balance. Plaintiff should avoid concentrated exposure to extremes of heart and pulmonary irritants to include fumes, odors, dust, gases, and poor ventilation. Plaintiff should avoid all exposure to hazards including unprotected heights and dangerous machinery. Plaintiff could frequently handle with the bilateral upper extremities. Plaintiff cannot drive. Plaintiff has the ability for frequent cervical flexion with the neck. Plaintiff is capable of simple, routine tasks involving simple work related decisions with few, if any, work place changes. Plaintiff cannot perform fast-paced production requirements. Plaintiff can have occasional contact with supervisors and coworkers, but no contact with public. (*Id*. at 19.)

6. Plaintiff is unable to perform any past relevant work. (*Id*. at 26.)

7. Plaintiff was born on September 15, 1970 and was 44 years old, which is defined as a younger individual age 45-49, on the alleged disability onset date. (*Id*.)

8. Plaintiff has at least a high school education and is able to communicate in English. (*Id*.)

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not plaintiff has transferable job skills. (*Id*.)

10. Considering plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that he can perform. (*Id*.)

11. Plaintiff has not been under a disability, as defined in the Social Security Act, from February 28, 2015, through the date of this decision. (*Id*. at 27.)

Plaintiff timely requested an appeal to the Appeals Council on or about November 23, 2016. (*Id*. at 9-10.) On January 17, 2017, the Appeals Council denied plaintiff's request for review. (*Id*. at 2.) At that point, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. §§ 404.981, 422.210(a); *see also* 42 U.S.C. § 405(h) (discussing finality of the Commissioner's decision). Plaintiff filed this action on March 9, 2017.

## II. DISCUSSION

The Social Security Act authorizes payment of disability insurance and supplemental social security benefits to persons with disabilities. Social Security Act, Disability Insurance Benefits, 42 U.S.C. §§ 401-34 (2012); Social Security Act, Supplemental Social Security Income, 42 U.S.C. §§ 1381-85 (2012). An individual shall be considered disabled if "he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); *see also* 20 C.F.R. § 404.1505(a).

### A. Standard of Review

In conducting its review, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Garner v. Sec'y of Health and Human Servs.*, 745 F.2d 383, 387 (6th Cir. 1984) (citing *Myers v. Richardson,* 471 F.2d 1265 (6th Cir. 1972)). Rather, the Court's review is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence" and that the correct legal standards were applied. 42 U.S.C. § 405(g); *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013); *Cole v. Comm'r of Soc. Sec.*, 661 F.3d 931, 937 (6th Cir. 2011). If the answer is "yes," then the

Court may not even inquire as to whether the record could support a decision the other way. *Smith v. Sec'y of Health and Human Servs.*, 893 F.2d 106, 108 (6th Cir. 1989).

"Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." *Cotton v. Sec'y of Health and Human Servs.*, 2 F.3d 692, 695 (6th Cir. 1993) (quoting *Casey v. Sec'y of Health and Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993)) (internal quotation marks omitted). Therefore, "[a] reviewing court will affirm the Commissioner's decision if it is based on substantial evidence, even if substantial evidence would also have supported the opposite conclusion." *Gayheart*, 710 F.3d at 374.

B. **Five-Step Sequential Evaluation Process**

The Commissioner has promulgated regulations that set forth a five-step sequential evaluation process that an ALJ must follow in evaluating a disability claim. 20 C.F.R. §§ 404.1520, 416.920. In summary, the evaluation proceeds as follows:

1) Is the claimant engaged in substantial gainful activity? If the answer is "yes," the claimant is not disabled. If the answer is "no," proceed to the next step.

2) Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement and significantly limits his or her ability to perform basic work activities? If the answer is "no," the claimant is not disabled. If the answer is "yes," proceed to the next step.

3) Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within Appendix 1 to Subpart P of Part 404 of this chapter? If the answer is "yes," the claimant is disabled. If the answer is "no," proceed to the next step.

> 4) Does the claimant have the RFC to return to his or her past relevant work? If the answer is "yes," then the claimant is not disabled. If the answer is "no," proceed to the next step.
>
> 5) Even if the claimant cannot perform past relevant work, does the claimant's RFC, age, education, and past work experience allow him or her to perform a significant number of jobs in the national economy? If the answer is "yes," the claimant is not disabled. If the answer is "no," the claimant is disabled.

*Id*.

The claimant bears the burden of proof with respect to the first four steps. *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 422-23 (6th Cir. 2008). The burden shifts to the Commissioner at the fifth step to prove that there are available jobs in the national economy that the claimant is capable of performing. *Id*. at 423. The claimant, however, always retains the burden of proving lack of RFC. *Herr v. Comm'r of Soc. Sec.*, 203 F.3d 388, 392 (6th Cir. 1999).

### C. Plaintiff's Contentions

Plaintiff argues that the ALJ erred in two ways. First, plaintiff argues that the ALJ erred by failing to analyze the opinion evidence in accordance with Agency policy, regulations, and Sixth Circuit precedent. Second, plaintiff argues that the ALJ erred by failing to account for his non-severe impairments as required by Agency policy and regulations. The Court will address each contention below, beginning with the second one.

#### 1. Non-severe impairments

The ALJ found that plaintiff had several non-severe impairments. An impairment is considered non-severe if it minimally affects the claimant's ability to do basic work activities. *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988); *Farris v. Sec'y of Health and Human Servs.*,

773 F.2d 85, 89-90 (6th Cir. 1985); *see also* 20 C.F.R. § 404.1521(a). With respect to carpal tunnel syndrome, the ALJ found that it, along with a diagnosis of trigger finger of the right and middle finger, pain in left wrist, and other disturbances of skin sensation, would no more than minimally affect plaintiff's ability to work, and, in conjunction, would limit plaintiff to frequent handling with the bilateral upper extremities and frequent cervical flexion of the neck; this is consistent with the RFC. (R. 19 [ability to frequently handle with bilateral upper extremities as well as ability for frequent cervical neck flexion included in RFC]); *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987) ("Since the Secretary properly could consider claimant's cervical condition in determining whether claimant retained sufficient residual functional capacity to allow him to perform substantial gainful activity, the Secretary's failure to find that claimant's cervical condition constituted a severe impairment could not constitute reversible error."). With respect to the diagnosis of schizophrenia, the ALJ find no supporting evidence for this condition. With respect to anemia, diabetes mellitus, vitamin D deficiency, neuropathy, arthritis, chronic migraine, and low vitamin B 12 levels, the ALJ found that they appear to be medically managed and did not rise to the level of severe impairments.

The mere diagnosis of a condition says nothing about the severity of an impairment. *Higgs v. Bowen*, 880 F.3d 860, 863 (6th Cir. 1988). And, it is plaintiff's burden to prove the severity of an impairment. *Id*. While plaintiff's brief states that the ALJ erred by failing to account for these non-severe impairments, it does not provide any argument with respect to same. In fact, that entire section appears to be missing from plaintiff's brief. Issues addressed in a "perfunctory manner, unaccompanied by some effort at developed argumentation are deemed waived." *See United States v. Layne*, 192 F.3d 556, 567 (6th Cir. 1999) (quoting *McPherson v.*

7

*Kelsey*, 125 F.3d 989, 996-96 (6th Cir. 1997)) (internal quotation marks omitted). And, the Court declines to guess what plaintiff's contentions are with respect to this issue. Therefore, the Court concludes that plaintiff has not carried his burden on this issue and is not entitled to a remand on this basis.

## 2. ALJ's treatment of opinion evidence

Plaintiff asserts that the ALJ erred in his treatment of the opinion as follows: (1) failure to give "good/specific/supported reasons" for rejecting the opinions of treating physician Dr. Ramona Coffie and examining psychologist Dr. Gregory Lynch; and (2) assigning great weight to the opinions of Dr. Lynch and the state agency consulting psychologist, Dr. Kay Barnfield, but then failing to explain why he did not adopt all of the limitations included in their opinions. (DN 15-1 at 8, 12.)

The RFC finding is the ALJ's ultimate determination of what a claimant can still do in a work setting despite his physical and mental limitations. 20 C.F.R. §§ 404.1545(a), 404.1546, 416.945(a), 416.946. The RFC finding is based on a consideration of medical source statements and all other evidence, medical and non-medical, in the record. 20 C.F.R. §§ 404.1529, 404.1545(a), 404.1546, 416.929, 416.945(a), 416.946. Thus, in making the RFC finding, the ALJ must (1) assign weight to the medical source statements in the record; and also (2) consider the descriptions and observations of the claimant's limitations as a result of the impairments from the claimant and the claimant's family and friends. 20 C.F.R. § 404.1545(a)(3), 416.945(a)(3). Plaintiff's arguments are directed at (1).

The source of a medical opinion dictates the process by which the ALJ gives it weight. *Gayheart*, 710 F.3d at 376. Treating sources must be given controlling weight if the opinion is


(1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) "not inconsistent with the other substantial evidence in [the] case record." *Id.* (quoting 20 C.F.R. § 404.1527(c)(2)) (internal quotation marks omitted). If the treating source is not given controlling weight, then the "opinion is weighed based on the length, frequency, nature, and extent of the treatment relationship, as well as the treating source's area of specialty and the degree to which the opinion is consistent with the record as a whole and is supported by relevant evidence." *Id.* (citing 20 C.F.R. § 404.1527(c)(2)-(6)). Whatever weight the ALJ accords a treating source's opinion, he or she must set forth "good reasons" for doing so. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) ("The regulation requires the agency to 'give good reasons' for not giving weight to a treating physician in the context of a disability determination.") (citing 20 C.F.R. § 404.1527(d)(2)). Opinions from examining and non-examining medical sources are assessed under these same guidelines (*i.e.*, examining relationship, specialization, consistency, and supportability), but are never assessed for controlling weight. *Id.* Finally, while opinions from treating, examining, and non-examining medical sources must be considered in determining RFC, the ALJ is ultimately responsible for the RFC finding. 20 C.F.R. § 404.1527(e); SSR 96-5p, 1996 WL 374183, at *2.

### a. Dr. Coffie

Dr. Coffie completed a physical capabilities assessment. (R. 826-27.) She opined, among other things, that plaintiff would require a cane to stand/walk; could sit/stand/walk two hours in an eight hour day; could frequently lift less than five pounds and occasionally lift ten pounds; could occasionally balance; and would need to sit quietly to rest or lie down at unpredictable internals three or four times a day for about thirty minutes. (*Id.*) The ALJ gave Dr.

Coffie's opinions only partial weight because of Dr. Coffie's heavy reliance on plaintiff's subjective complaints, the short duration of the treating relationship (about three months), and limited objective evidence. Specifically, the ALJ accepted that plaintiff had a limited ability to stand/walk, but that the limitations in sitting and lifting appeared excessive. The ALJ also found that the need for unscheduled breaks to be somewhat inconsistent with plaintiff's apparent positive response to continuous positive airway pressure ("CPAP") and medication.

Plaintiff alleges that the ALJ erred by giving Dr. Coffie's opinions partial weight solely because Dr. Coffie relied heavily on plaintiff's subjective complaints. Plaintiff further asserts that Dr. Coffie's opinion was based on clinical findings, treatment history, subjective reports, and her own medical expertise as to what those findings meant in the context of plaintiff's impairments. This is the extent of plaintiff's argument. This argument fails for several reasons.

First, plaintiff is incorrect. The ALJ cited two other reasons for giving Dr. Coffie's opinions partial weight: the short duration of the treating relationship at the time of the assessment (3 months)[1] and limited objective evidence. "While this stated reason may be brief, it reaches several of the factors that an ALJ must consider when determining what weight to give a non-controlling opinion by a treating source, including: the length of the treatment relationship and the frequency of examination, 20 C.F.R. § 404.1527(d)(2)(i); the nature and extent of the treatment relationship, § 404.1527(d)(2)(ii); and the supportability of the opinion, § 404.1527(d)(3)." *Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 651 (6th Cir. 2009).

Second, the ALJ then went on to discuss why he rejected some of the limitations imposed by Dr. Coffie. The Court acknowledges that the ALJ's analysis could have been more detailed.

---

[1] As plaintiff points out, Dr. Coffie conducted four examinations prior to completing the physical capabilities assessment. (DN 15-1 at 8-9.)

For example, the ALJ could have gone the next step and, in addition to noting that Dr. Coffie ordered MRIs of the lumbar and cervical spine and the results of same, stated that those MRIs did not support the extreme limitations that she assessed. Ultimately, however, "there was some effort to identify the specific discrepancies and to explain why []the treating physician's conclusion [got] the short end of the stick." *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 552 (6th Cir. 2010). For example, the ALJ noted that, at a January 2016 examination by Dr. Coffie, she noted that plaintiff had normal gait and was able to stand without difficulty. (R. 22.) Moreover, the ALJ did impose significant limitations on plaintiff's RFC based on Dr. Coffie's opinions – for example, the ALJ limited him to standing/walking two hours and found that he could never crawl.

Finally, the Court notes that plaintiff does not point to any objective medical evidence to support Dr. Coffie's assessed limitations, in particular that he required an assistive walking device, was limited to sitting two hours in an eight hour day, or would need to sit quietly to rest or lie down at unpredictable levels three or four times a day for about thirty minutes. *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) ("An ALJ must give the opinion of a treating source controlling weight *if he finds the opinion well-supported by medically acceptable clinical and laboratory diagnostic techniques* and not inconsistent with the other substantial evidence in [the] case record.") (emphasis added) (citation and internal quotation marks omitted). Instead, plaintiff only generally asserts that Dr. Coffie's opinion was based on clinical findings, treatment history, and her own medical expertise, but does not say how those findings and history support the assessed limitations. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003) ("Through step four, the claimant bears the burden of proving the existence and

severity of limitations caused by her impairments . . . ."). Therefore, the Court concludes that the ALJ's decision to only partially credit Dr. Coffie's opinion was supported by substantial evidence.

### b. Dr. Lynch

Dr. Lynch performed a one-time psychological examination of plaintiff. Dr. Lynch opined that plaintiff had (1) slight limitations in his capacity to understand, remember, and carry out instructions towards performance of simple repetitive tasks; (2) slight limitations in his capacity to sustain attention and concentration towards performance of simple repetitive tasks; (3) moderate limitations in his ability to tolerate stress and pressure of day-to-day employment; and (4) moderate to marked limitations in his capacity to respond appropriately to supervision, coworkers, and work pressures in a work setting. (R. 518-19.) Dr. Lynch was not a treating physician; therefore his opinion was not entitled to controlling weight or any weight at all. Nonetheless, the ALJ was required weigh the opinion in light of the examining relationship, specialization, consistency, and supportability of same.

The ALJ gave Dr. Lynch's opinions great weight with the exception of the marked limitation in plaintiff's capacity to respond appropriately to supervision, coworkers, and work pressures in a work setting. Specifically, the ALJ found that, although Dr. Lynch noted a "moderate to marked" limitation in this regard, nothing more than a moderate limitation was supported by the record. (*Id*. at 519.) The ALJ further found that, despite his impairments, plaintiff retained the ability to perform simple, routine tasks involving simple work related decisions with few, if any, work place changes; cannot perform fast-paced production

requirements; and can only have occasional contact with supervisors and coworkers, but no contact with the public.

There is evidence in the record to support the ALJ's conclusion. In his step three analysis, the ALJ noted moderate difficulties in social functioning. The ALJ noted that plaintiff reported texting, using Facebook, spending time at the house of his best friend's daughter, calling others, and going out on his own. (R. 18). The ALK pointed out that plaintiff had some difficulty getting along with family, but denied problems with others. (*Id*.) The ALJ also recognized that plaintiff had some difficulty with authority figures, but that he had never been let go from a job because of problems getting along with others. (*Id*.) Moreover, in assessing plaintiff's RFC at step four, the ALJ noted plaintiff's mental health treatment at Communicare. Specifically, the ALJ noted, among other things, that he participated in individual and group therapy; that his mental status examination reflected adequate attention and concentration; and that during a treatment planning session, he indicated that he had trouble focusing and would get side-tracked during a conversation. (*Id*. at 23.) By April 2016, however, the ALJ noted that records reflect that plaintiff reported doing much better. (*Id*.)

Plaintiff argues that the record supports Dr. Lynch's conclusion that he has moderate to marked limitations in his ability to respond appropriately to supervision, coworkers, and work pressures in a work setting. In particular, plaintiff asserts that while treating with Communicare, he reported difficulty getting along with his former boss and coworkers. (*Id*. at 818.) On January 18, 2016, records indicated that plaintiff had ongoing and/or variably severe deficits in interpersonal relationships, ability to engage in socially constructive activity, and ability to maintain responsibilities; records also indicated that plaintiff had significant deterioration in the

13

ability to fulfill responsibilities and obligations to job, school, self, or significant others, and these may be avoided or neglected on some occasions. (*Id*. at 821.) Plaintiff argues that this evidence demonstrates marked limitations and was not addressed by the ALJ. Plaintiff's arguments fail for two reasons.

First, "[a]lthough required to develop the record fully and fairly, an ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered." *Dykes ex rel. Brymer v. Comm'r of Soc. Sec.*, 112 F. App'x 463, 467 (6th Cir. 2004) (quoting *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000)). Thus, the fact that the ALJ did not discuss every single record is not reversible error.

Second, it is the ALJ's responsibility to resolve any conflicts in the record. *See Martin v. Comm'r of Soc. Sec.*, 170 F. App'x 369, 373 (6th Cir. 2006) (unpublished opinion) ("The ALJ had the duty to resolve conflicts in medical evidence . . . ."). The ALJ, as noted above, pointed to evidence in the record that supported his conclusion that plaintiff has no more than moderate limitations in responding appropriately to supervision, coworkers, and work pressures in a work setting. That plaintiff has pointed to other records that, in his opinion, appear to conflict with the ALJ's finding (or support a marked limitation) does not constitute error. This is because "[s]ubstantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). In short, the Court is limited to determining whether substantial evidence supports the ALJ's decision, and the Court concludes that it does here.

Finally, plaintiff argues, in a summary fashion, that the ALJ did not adopt Dr. Lynch's opinion regarding plaintiff's moderate limitations in handling stress and pressure of day-to-day employment. Plaintiff does not explain, however, how this is inconsistent with the mental limitations included in the RFC, specifically the limitation of simple, routine tasks involving simple work-related decisions with few, if any, work place changes, as well as a prohibition on fast-paced production requirements. Nor does plaintiff explain how moderate limitations preclude him from working at all, which is his burden to show. Therefore, plaintiff's argument with respect to this issue fails as well.

### c. Dr. Barnfield

The Court will not repeat all of non-examining state agency doctor Dr. Barnfield's opinions here, as plaintiff only takes issue with one. Specifically, plaintiff points out that, despite giving Dr. Barnfield's opinions great weight, the ALJ did not adopt one of the limitations imposed by Dr. Barnfield. Specifically, Dr. Barnfield opined that plaintiff can only sustain attention for periods of two-hour segments for simple tasks involving minimal variation and little independent judgment. Plaintiff argues that the ALJ erred in failing to explain these omissions.

Plaintiff, citing to case law addressing the requirements for addressing opinions of *treating physicians*, states that, once the ALJ accepts a medical opinion, he must include the established limitations in the RFC finding or explain why they were excluded. Notably, plaintiff does not cite to any case law that suggests the assigned RFC in this case is incompatible with sustaining attention for periods of two-hour segments for simple tasks involving minimal variation and little independent judgment. *Cf. Bond v. Comm'r of Soc. Sec.*, No. 1:15-CV-204-TRM-SKL, 2016 WL 7799316, at *7 (E.D. Tenn. June 14, 2016), *report and recommendation*

15

*adopted*, No. 1:15-CV-204, 2016 WL 4548440 (E.D. Tenn. Sept. 1, 2016) ("The ALJ also included in her RFC determination that Plaintiff was limited to simple, routine and repetitive tasks . . . which accommodates Dr. Neboschick's opinions that Plaintiff could understand and remember simple instructions; *sustain attention for simple, structured tasks for periods of two-hour segments*; and make simple work-related decisions and accommodates Dr. de la Torre's opinions that Plaintiff could understand, remember, and carry out simple and one to four step detailed tasks; concentrate and persist for *a two-hour time period* in an eight-hour workday with customary breaks; and independently set practical goals.") (emphasis added) (internal citations omitted).

Moreover, even though the ALJ gave great weight to Dr. Barnfield's opinions, he was not required to incorporate every single one of them into the RFC finding. *See, e.g.*, *Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015) (unpublished opinion) ("Even where an ALJ provides 'great weight' to an opinion, there is no requirement that an ALJ adopt a state agency psychologist's opinions verbatim; nor is the ALJ required to adopt the state agency psychologist's limitations wholesale."). And plaintiff has not shown how his mental RFC limitations were otherwise not supported by substantial evidence. Therefore, plaintiff's arguments with respect to this issue also fail.

### III. CONCLUSION

For these reasons, and the Court being otherwise sufficiently advised, it is **ORDERED** as follows:

(1) The final decision of the Commissioner of Social Security is **AFFIRMED** and this action is **DISMISSED** with prejudice.

(2) A final judgment will be entered separately.

cc: Counsel of record